Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000355
30-MAR-2021
07:48 AM
Dkt. 67 SO

NO. CAAP-17-0000355

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE MATTER OF THE RAYMOND K. TANAKA
TRUST DATED OCTOBER 5, 1991

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(T. No. 16-1-0148)

SUMMARY DISPOSITION ORDER
(By: Hiraoka, Presiding Judge, Wadsworth and Nakasone, JJ.)

Petitioner-Appellant Lance K. Tanaka (**Lance**) appeals from a March 20, 2017 Circuit Court of the First Circuit (**Circuit Court**) Order Denying Petitioner Lance K. Tanaka's Petition for Instructions Filed July 22, 2016 (**Order**) and March 20, 2017 Judgment Pursuant to Order Denying Petitioner Lance K. Tanaka's Petition for Instructions Filed July 22, 2016.[1]

On appeal, Lance contends that the Circuit Court erred in (1) concluding that laches applied to bar Lance's Petition for Instructions, and (2) finding that Lance had waived his beneficial rights to The Raymond K. Tanaka Trust, Dated October 5, 1991 (**Raymond's Trust**).

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we vacate and

---

[1] The Honorable Derrick H.M. Chan presided.

remand.

"An abuse of discretion occurs where the probate court bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." In re Estate of Damon, 119 Hawaiʻi 500, 503, 199 P.3d 89, 92 (2008) (internal quotation marks and citation omitted). In a situation where the probate court did not issue factual findings, however, the Hawaiʻi Supreme Court recently held that "it is not the function of the appellate court to conduct its own evidentiary analysis." In re Elaine Emma Short Revocable Living Tr. Agreement, 147 Hawaiʻi 456, 465, 465 P.3d 903, 912 (2020).[2] "[T]he absence of factual findings by the probate court" does not enable an appellate court "to meaningfully review the basis of the probate court order . . . ." Id. at 459, 465 P.3d at 906.

In this case, the entirety of the Circuit Court's Order states:

> IT IS HEREBY ORDERED THAT:
>
> 1. The Petition is DENIED in its entirety based upon this Court's finding that upon review of the timeline of this instant matter, it is clear that throughout the relevant timeline, Petitioner waived any and all rights and claims to his beneficial rights in the Raymond K. Tanaka Trust Dated October 5, 1991, and laches applies; and
>
> 2. There is no just reason for delay and final judgment shall be entered pursuant to Rule 34(a) of the Hawaii Probate Rules and Rule 54(b) of the Hawaii Rules of Civil Procedure with respect to any of the claims raised in this Petition.

There are no findings of fact or conclusions of law that explain how the Circuit Court determined that "laches applies" to bar Lance's petition, or to explain the basis for the Circuit Court's conclusion that Lance "waived any and all rights and claims to

---

[2] In In re Elaine Emma Short, the Hawaiʻi Supreme Court held "that the absence of factual findings by the probate court did not enable the ICA to meaningfully review the basis of the probate court order to modify the trust and that the ICA's reliance on selective extrinsic evidence was improper." 147 Hawaiʻi at 459, 465 P.3d at 906. The Court vacated the ICA's judgment and the probate court's order and judgment, and remanded the case for further proceedings consistent with its opinion. Id.

his beneficial rights to Raymond's Trust."  Such findings are mandatory.  In re Elaine Emma Short, 147 Hawaiʻi 456, 465 P.3d 903.

The pertinent background is as follows.  This appeal centers around the subject property located at 44-711 Malulani Street, Kāneʻohe, Hawaiʻi, 96744 (**Property**).  In 1991, Lance's parents, Raymond K. Tanaka (**Raymond**) and Esther H. Tanaka (**Esther**) created separate trusts, into which they each placed one half of their respective interests in the Property.  Through a series of transfers between 1993 and 1998, the interest in the Property became held by no fewer than ten separate individuals, trusts, and generation transfer trusts.  Relevant to the case at hand, at Raymond's death in 2001, Raymond's Trust held a 20% interest and three generation transfer trusts for the benefit of Lance held a 6%, 9%, and 9% interest, respectively (Raymond's Trust and the three generation transfer trusts are collectively referred to as the **Trusts**).

On November 29, 2001, Esther, Lance, and Lance's brother Daryl K. Tanaka (**Daryl**), and Lance and Daryl's wives engaged attorney Margaret J. Nakamatsu (**Attorney Nakamatsu**) to assist them with navigating the quagmire of the Property's ownership.  On December 9, 2001, Esther, Lance, Daryl, and Lance and Daryl's wives signed agreements that terminated the Trusts (**Termination Agreements**), and the Property was transferred by warranty deed to Esther, who immediately transferred the Property into her own trust.

When Raymond died in 2001, Lance and his wife lived at the Property with Esther.  In 2014, Daryl's son, Kevin K. Tanaka (**Kevin**), and Kevin's girlfriend moved into an addition to the home that Lance and Daryl had just built at Daryl's sole expense. Lance contends that Kevin moving in was his first inkling that he no longer had a future interest in the Property.  In February 2016, Esther offered the Property for sale to those residing

there and requested that all residents move out within sixty days.  Lance and his wife moved out in April 2016.  In May 2016, Kevin and his brother Damian Tanaka (**Damian**) purchased the property from Esther's trust.  On July 22, 2016, fifteen years after Lance signed the Termination Agreements that terminated his beneficial interest in Raymond's Trust, Lance filed a Petition for Instructions[3] requesting, *inter alia*, that the court "[p]rovide instructions as to restoring Petitioner's beneficial rights in Raymond's Trust, or alternatively, provide instructions as to compensating Petitioner for the loss of such rights[.]"  Esther filed a response, as did Daryl and his three adult children, Heather Kishida, Kevin, and Damian (collectively, **Appellees**), in which they raised laches, waiver, and other equitable defenses.[4]

### **Laches**

As to Lance's first point of error that the Circuit Court erred in concluding laches applied to bar Lance's petition, because there are no findings as required by In re Elaine Emma Short, we cannot meaningfully review the Circuit Court's conclusion.  143 Hawai'i at 459, 465 P.3d at 906.

> There are two components to laches, both of which must exist before the doctrine will apply.  First, there must have been a delay by the plaintiff in bringing his claim, and that delay must have been unreasonable under the circumstances.  Delay is reasonable if the claim was brought without undue delay after plaintiff knew of the wrong or knew of facts and circumstances sufficient to impute such knowledge to him.  Second, that delay must have resulted in prejudice to defendant.  Common but by no means exclusive examples of such prejudice are loss of evidence with which to contest plaintiff's claims, including the fading memories or deaths of material witnesses, changes in the value of the subject matter, changes in defendant's position, and intervening rights of third parties.

---

[3]    Lance did not contest the validity of the termination of the generation transfer trusts of which he had also been a beneficiary.

[4]    While Esther filed a response below, Esther did not file an Answering Brief on appeal.

Adair v. Hustace, 64 Haw. 314, 321, 640 P.2d 294, 300 (1982) (emphases added) (internal citations omitted), abrogated on other grounds.

Lance contends that Appellees failed to allege or show prejudice, which prohibits a finding of laches, and that any delay by Lance was reasonable. Appellees argue, *inter alia*, that over fifteen years have passed since Lance voluntarily executed the Trust Termination Documents in 2001, and that he knowingly participated in execution of said termination documents. Appellees further contend that Lance signed the conflict of interest waiver regarding Attorney Nakamatsu's representation of Lance, Appellee Daryl, and Esther, with respect to termination of the trusts.

The Circuit Court did not specify whether both elements of laches, delay and prejudice were established -- only stating that "laches applies" in its denial of the petition for instructions. Without any findings, we are unable to determine whether the Circuit Court erred in concluding that laches applied. See In re Elaine Emma Short, 143 Hawaiʻi 456, 465 P.3d 903. In addition, the application of laches appears to entail issues of fact that the Circuit Court could have deemed contested pursuant to Hawaiʻi Probate Rules (**HPR**) Rules 19 and 20,[5] but it

---

[5]    HPR Rules 19 and 20 provide:

**Rule 19.  DEFINITION.**

A contested matter is any one in which an objection has been filed.  The contested matter shall be limited to facts and issues in dispute, and shall not affect other issues or pleadings before the court with respect to the same proceeding that are not in dispute, provided that no party is prejudiced thereby.

**Rule 20.  DISPOSITION OF CONTESTED MATTERS.**

**(a)  Assignment.**  The court by written order may retain a contested matter on the regular probate calendar or may assign the contested matter to the civil trials calendar of the circuit court.

**(b)  Guideline for Assignment.**  The court may use as a

did not do so in this case.

### **<u>Waiver</u>**

As to Lance's second point of error that the Circuit Court erred in concluding that Lance waived any and all rights and claims to his beneficial rights to Raymond's Trust, because

---

guideline on whether to assign a contested matter to the civil trials calendar the expected length of the hearing and whether it will take more than one-half day.  The court may also assign other matters to the civil trials calendar, with or without the stipulation of the parties, and the court, at the request of all parties, may retain on the probate calendar a contested matter that would otherwise be assigned to the civil trials calendar, if the court determines the matter can be handled more efficiently and effectively.  When the court assigns a contested matter to either calendar, the court may set a status conference date, which the court clerk will note in the order assigning the contested matter, or in a separate status conference order.

**(c)  Effect of Assignment to Civil Trials Calendar.**  The Hawaiʻi Rules of Civil Procedure and the Rules of the Circuit Courts will apply to all contested matters assigned to the civil trials calendar.  However, no right to jury trial shall be created by assignment to the civil trials calendar where such a right does not exist in the underlying proceeding.  Unless otherwise ordered by the court, when a matter is assigned to the civil trials calendar, then for all procedural purposes, the party objecting to the petition shall be considered the plaintiff, the objection is to be treated as a complaint, and the complaint shall be deemed to have been filed on the date of the assignment to the civil trials calendar.

**(d)  Procedures in Retained Contested Matters.**  Whenever the court retains jurisdiction of a contested matter as a probate proceeding, the court in the order of assignment may, at the request of the parties, designate and order that any one or more of the Hawaiʻi Rules of Civil Procedure and/or the Rules of the Circuit Courts shall be applicable in such matter.

**(e)  Effect on Underlying Matter.**  The designation of an issue as a contested matter and the assignment thereof to the civil trials calendar or the probate calendar shall not affect the underlying proceeding, and the proceeding shall continue to the extent that such administration is not inconsistent with the issues being contested.

**(f)  Appeals.**  An order resolving the issues in a contested matter shall be reduced to judgment in accordance with Rule 34 of these rules and may be appealed as provided therein.

**(g)  Termination of Assignment.**  When the contested matter is finally resolved, whether by settlement, final unappealed order, or disposition on appeal, the assignment shall terminate and all matters relating to the proceeding shall thereafter be controlled by these rules.

there are no findings as required by In re Elaine Emma Short, we cannot meaningfully review the Circuit Court's conclusion. See 143 Hawaiʻi at 459, 465 P.3d at 906.

"[W]aiver is defined as an intentional relinquishment of a known right, a voluntary relinquishment of rights and the relinquishment or refusal to use a right." Estate of Searl, 72 Haw. 222, 226-27, 811 P.2d 828, 831 (1991). "To constitute a waiver, there must have existed a right claimed to have been waived and the waiving party must have had knowledge, actual or constructive, of the existence of such a right at the time of the purported waiver." Id. Lance contends that he did not knowingly relinquish his beneficial rights when he signed the Termination Agreements. Lance argues that, even if he signed the multiple termination agreements, he has no "recollection of the Termination Agreements prior to receiving copies and viewing them for the first time in April 2016." Lance further argues that even if the Termination Agreements were signed, they would be unenforceable due to the lack of return consideration, and that any reformation of Raymond's Trust and/or estate plan required probate court approval. Appellees respond that Lance is "estopped from claiming entitlement to any damages resulting from his own participation in the termination of the Trusts and must be deemed to have waived any rights he has [sic] a result of his own voluntary actions and failure to seek a remedy for [sic] in the fifteen years that has [sic] transpired."

The Circuit Court did not specify how it determined that the elements of waiver were met in this case, to arrive at its conclusion that "throughout the relevant timeline, [Lance] waived any and all rights and claims" to Raymond's Trust. Without any findings, we are unable to determine whether the Circuit Court erred in concluding that Lance waived his rights and claims to Raymond's Trust. See In re Elaine Emma Short, 147 Hawaiʻi 456, 465 P.3d 903. Similar to the laches issue, the

7

application of waiver also appears to entail issues of fact that the Circuit Court could have deemed contested pursuant to HPR Rules 19 and 20, but it did not do so.

Therefore, IT IS HEREBY ORDERED that the Order Denying Petitioner Lance K. Tanaka's Petition for Instructions Filed July 22, 2016 entered on March 20, 2017, and the Judgment Pursuant to Order Denying Petitioner Lance K. Tanaka's Petition for Instructions Filed July 22, 2016 entered on March 20, 2017, in the Circuit Court of the First Circuit, are vacated and this matter is remanded for further proceedings consistent with this Order.[6]

DATED:  Honolulu, Hawaiʻi, March 30, 2021.


On the briefs:

Mark M. Murakami
(Damon Key Leong Kupchak
Hastert)
for Appellant Lance K. Tanaka

Sofia Hirosane McGuire
for Appellees Daryl K. Tanaka,
Heather Kishida, Kevin K.
Tanaka, and Damian Tanaka

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge

---

[6]     The probate judge who presided over this matter is no longer available to enter findings of fact, and thus, we remand the case to the probate court for further proceedings consistent with this order.  See In re Elaine Emma Short, 147 Hawaiʻi at 471 n. 30, 465 P.3d at 918 n. 30. ("Because the probate judge who initially presided over this case is unavailable to enter findings of fact, we . . . remand the case to the probate court for further proceedings consistent with this opinion.").